FILED
06-22-2017
Clerk of Circuit Court
Kenosha County
2017CV000572
Honorable Chad G
Kerkman
Branch 8

STATE OF WISCONSIN     CIRCUIT COURT     KENOSHA COUNTY

FIFTY STATES DISTRIBUTORS, INC., d/b/a
Martino's Master Dry Cleaners,
a Wisconsin corporation,
7513 41st Avenue
Kenosha, WI 53142, and

RED MAPLE MANAGEMENT, LLC, an Indiana
limited liability company,
4600 Northwest Plaza West Drive
Zionsville, IN 46077,

    Plaintiffs,

v.

MARYLAND CASUALTY COMPANY, an
inactive foreign corporation,
600 Red Brook Blvd
Owings Mills, MD 21117, and

ZURICH AMERICAN INSURANCE COMPANY,
an active foreign corporation,
1299 Zurich Way
Schaumburg, IL 60168,

    Defendants.

Case No.

Case Code: 30301, 30701
            Money Judgment
            Declaratory Judgment

Claim for money judgment greater than $10,000

## COMPLAINT

Plaintiffs, Fifty States Distributors, Inc., d/b/a Martino's Master Dry Cleaners, and Red Maple Management, LLC, by their attorneys, Friebert, Finerty & St. John, S.C., allege as follows:

### NATURE OF ACTION

This is an insurance coverage action related to environmental contamination at two dry cleaning sites in the City of Kenosha owned by Plaintiff Fifty States Distributors, Inc. d/b/a Martino's Master Dry Cleaners. Fifty States purchased comprehensive general liability policies

for the two businesses and, after receiving responsible party ("RP") letters from the Wisconsin Department of Natural Resources ("WDNR") directing the company to investigate and remediate the contamination, the defense of the RP letters was tendered to the company's insurers, including Maryland Casualty Company. After Maryland Casualty unilaterally withdrew from its defense duty at these two sites, Plaintiffs seek to enforce the terms of their Maryland Casualty insurance policies.

## PARTIES

1. Plaintiff Fifty States Distributors, Inc., d/b/a Martino's Master Dry Cleaners ("Fifty States"), is a Wisconsin corporation in the business of owning and operating dry cleaners. Fifty States owns and operates multiple dry cleaning businesses, including the two at issue in this case that are located at: (a) 3917 52nd Street, Kenosha, and (b) 4700 7th Avenue, Kenosha.

2. Plaintiff Red Maple Management, LLC is an Indiana limited liability company, registered to do business in Wisconsin, with its principal place of business located at 7405 Westfield Blvd., Indianapolis, Indiana 46240. In December 2015, Fifty States assigned to Red Maple its interest in the insurance claims involving the 52nd Street and 7th Avenue sites, including the proceeds of this claim against Defendants.

3. Defendant Maryland Casualty Company is an inactive foreign corporation with its administrative office located at 600 Red Brook Blvd., Owings Mills, Maryland 21117. Upon information and belief, Maryland Casualty was merged into Defendant Zurich American Insurance Company, an active foreign corporation with its main administrative office located at 1299 Zurich Way, Schaumburg, Illinois 60196. The registered agent for both Maryland Casualty and Zurich is Corporation Service Agency, 8040 Excelsior Drive, Suite 400, Madison Wisconsin, 53717.

## BACKGROUND

*The Policy*

4.  Fifty States Distributors purchased policy number SMP 32749953 (the "Policy") from Maryland Casualty Company, and the Policy was effective from 5/1/79 to 5/1/82, with annual limits of $50,000 per "Occurrence" for "Property Damage."

5.  Fifty States Distributors and Daniel Martino are named insureds under the Policy, and the Policy provided coverage for dry cleaning operations, including the 7th Avenue and 52nd Street sites.

6.  The Policy contains multiple coverage forms, including "Special Multi-Peril Policy of Liability" and "Comprehensive General Liability."

*7th Avenue Site*

7.  From approximately the 1940s until 1978, John Martino owned and operated a Rite Way Cleaners at the 7th Avenue site.

8.  In 1978, John Martino sold his dry-cleaning business to his son Daniel Martino, who then organized Rite Way under a different entity, Plaintiff Fifty States Distributors d/b/a Martino's Master Dry Cleaners.

9.  Daniel Martino and Fifty States continue to this day to operate Martino's Master Dry Cleaners at this site.

10. As part of its dry cleaning operations, Fifty States, like most dry cleaners, used the solvent perchloroethylene ("PERC") to clean the clothes.

11. While Fifty States and Martino are unaware of any large spills of solvents to the environment during the operation of the dry cleaners at the 7th Avenue site, in the 1990s it started to become more known within the industry that small releases often occurred as part of the business operations and that such releases likely occurred up until about the mid-1980s when

3

regulations were enacted and industry knowledge of environmental issues regarding dry cleaning operations increased. These small intermittent releases often occurred near dumpsters, sewer lines and underneath dry cleaning machines.

12. In 1997, the State of Wisconsin created a remediation program called the Dry Cleaner Environmental Response Fund (DERF), which reimbursed dry cleaners for pre-approved eligible investigation and remediation costs. To enter the program, a dry cleaner must first discover the actual presence of solvent contamination at a site.

13. On or about February 1, 2002, Fifty States, through Sigma Environmental, notified the WDNR that soil and possible groundwater contamination had been detected at the 7th Avenue site.

14. Fifty States neither expected nor intended to cause any releases of PERC or any resulting environmental contamination.

15. In a letter dated February 5, 2002, the WDNR sent a Responsible Party, or RP, letter to Fifty States, directing it to investigate and remediate the contamination.

16. At the time the RP letter was issued, the law in Wisconsin was that RP letters were not "suits," and that demands by WDNR for remediation costs were not "claims" for "property damage" under general liability policies like those issued by Maryland Casualty.

17. Upon receipt of the RP letter, Fifty States entered the DERF program and began to investigate the 7th Avenue site.

*52nd Street Site*

18. Fifty States also operated a Martino's Master Dry Cleaners at the 52nd Street site during the term of the Maryland Casualty policy and continues to operate that location today as a drop off-only site.

4

19. The operations at the 52nd Street site were similar in nature to those at the 7th Avenue site.

20. The dry cleaning operation commenced at the site in 1966 under the name Better Way Cleaners and was purchased by Mr. Martino and Fifty States in 1970, at which time the name was changed to Martino's Master Cleaners.

21. PERC was utilized as the solvent for the cleaning process from the time the business began until 2005, when the site was converted to a drop-off location.

22. Fifty States is unaware of any large spills of solvents during the operation of the dry cleaners at 52nd Street but, as set forth above in paragraph 11, has come to learn that small releases likely occurred as part of the business operations and that such releases likely occurred up until about the mid-1980s when regulations were enacted and industry knowledge of spills increased.

23. Fifty States was already in the DERF program for the 7th Avenue site when the WDNR announced that it would no longer allow new sites into the program. All dry cleaners were encouraged to enroll before the cutoff date in order to preserve their eligibility.

24. Fifty States engaged a consultant to conduct some testing, which revealed the presence of contamination. As required by law, Fifty States gave notice of the contamination to WDNR in July 2008.

25. Fifty States neither expected nor intended to cause releases or any resulting environmental contamination.

26. In an RP letter dated August 25, 2008, the WDNR acknowledged that Fifty States' then-counsel had informed the WDNR that chlorinated solvents had been detected in the soil and groundwater at the 52nd Street site.

5

27. The WDNR's letter identified Dan Martino as the responsible party and directed him to investigate and remediate the contamination.

28. By letter dated August 29, 2008, WDNR accepted the 52nd Street site into the DERF program.

*Fifty States' Tender of Claims to Insurers*

29. Fifty States and Martino tendered the 7th Avenue and 52nd Street claims to Zurich and Maryland Casualty in a letter dated March 8, 2010.

30. A year passed without a response from Zurich, and in March 2011 Fifty States' attorneys requested that Zurich respond with its position. By letter dated June 6, 2011, Zurich accepted Fifty States' tender of both sites under a reservation of rights. The June 6, 2011 letter reserves Zurich's rights to contest coverage issues, but does not specifically address the issue of categorizing costs as defense or indemnity.

31. Fifty States also tendered claims regarding 7th Avenue and 52nd Street to two other insurance carriers, CNA Insurance (also known as American Casualty Company of Pennsylvania) and Badger Mutual Insurance (also known as Partners Insurance).

32. CNA issued policies covering both the 7th Avenue and 52nd Street sites. Badger's policies covered only the 52nd Street site.

33. CNA and Badger Mutual each accepted the defense pursuant to a reservation of rights.

34. CNA was the first insurer to agree to provide a defense to Fifty States for both sites and, on or about June 13, 2011, CNA and Zurich entered into a cost-sharing agreement regarding the defense obligations each had under their respective policies. Upon information and belief, each insurer agreed to pay 50% of the defense and investigation costs.

35. In February 2012, Badger agreed to participate in the defense of the 52nd Street claim and, subsequently, Badger, CNA and Zurich agreed to each pay one-third of all the defense and investigation costs for that site.

36. Because each insurer had agreed to defend only under a reservation of rights, Martino had the right to control the defense and the insurers were responsible for paying all reasonable and necessary defense and investigation costs.

37. Fifty States hired Friebert, Finerty & St. John, S. C., (FFSJ) as its environmental defense counsel and Environmental Forensics Investigations, Inc. ("EnviroForensics") as its environmental consultant for investigation and remediation of 7th Avenue and 52nd Street.

38. Subsequent to their decisions to participate in the defense, Zurich, CNA and Badger each regularly paid their agreed-upon share of the defense and investigation costs for each site directly to FFSJ and EnviroForensics. That changed in late May 2015.

*Zurich Changes Its Coverage Position*

39. On May 21, 2015, representatives of Plaintiffs and the insurers participated in a telephone conference. At this conference, an Environmental Claim Specialist for Zurich, Holly Trager, informed the group that Zurich was taking the position that all costs paid to EnviroForensics to date were being categorized as "indemnity" rather than "defense."

40. The consequence, according to Zurich, was that the Policy's limits had been exceeded and Zurich had no further obligation to either defend or indemnify Fifty States for the WDNR claims at 7th Avenue and 52nd Street.

41. Zurich memorialized its position in a letter dated May 28, 2015, which reads in part:

> So far, the total amount of damages arising out of the above-captioned claims exceeds the limits of the applicable Maryland Casualty Company ("Maryland") policy SMP32749953. At this time, Maryland has paid $247,522.96 on behalf of Fifty States Distributors, Inc. dba The Better One (a/k/a Martino's Master Dry Cleaners) on this claim. The applicable

7

> total limit for this policy is $150,000.00. At this time we are not requesting reimbursement from the insured for amounts paid over the limit amount. However, we will be making no further payments and intend to close our (*sic*) within 30 days.

42. Prior to the May 21, 2015 meeting, Zurich had never expressed to Plaintiffs, or to CNA and Badger, that it considered all of the site investigation work being performed to count towards the Policy's indemnity limits. For example, neither Zurich's June 6, 2011 reservation of rights letter nor subsequent payments addressed categorizing costs as defense versus indemnity.

43. Contrary to Zurich's position, both CNA and Badger, which each had policies containing the same insuring language as the Maryland Casualty policy, had taken the position that the site investigation work conducted by EnviroForensics constituted defense costs under their policies.

44. Subsequent to the May 28, 2015 letter, Zurich rejected a request for reimbursement by Fifty States.

45. In a letter dated August 28, 2015, counsel for Fifty States informed Zurich that:

> We have received the enclosed notice from Zurich that it will no longer be paying defense costs on the Martino claims. As we informed you when you advised us of this position a few months ago, this is a breach of Zurich's duty to defend. Zurich's unilateral decision that costs incurred to investigate the nature and extent of contamination erode the limits of the policy is not a reasonable interpretation of the policy language and is inconsistent with how other insurers are handling such claims in Wisconsin. Further, by engaging in such conduct, Zurich has waived any defense to coverage it may have had. Accordingly, be advised that our client expressly reserves all rights and claims he has against Zurich arising out of this breach.

46. Zurich responded in a letter dated September 14, 2015, which read: "In response to your letter of August 28, 2015, we stand by our decision that the policies are exhausted and that investigation costs are indemnity and not defense costs in Wisconsin."

47. As a result of Zurich's decision to reclassify the investigation costs as indemnity payments, both Badger and CNA were forced to pay a larger share of the defense costs, with

CNA assuming 100% responsibility for the 7th Avenue site and CNA and Badger evenly splitting the costs for the 52nd Street site.

48. In November 2015, Fifty States reached a settlement with Badger. As part of that settlement, Badger assigned to Fifty States any contribution claims it may have against Zurich with respect to the payments it made for the defense and investigation of the 52nd Street site.

49. In November 2016, Fifty States reached a settlement with CNA. As part of that settlement, CNA assigned to Fifty States any contribution claims it may have against Zurich with respect to the payments it made for defense and investigation at both the 7th Avenue and 52nd Street sites.

## FIRST CLAIM FOR RELIEF
(Breach of Duty to Defend)

50. All allegations of this Complaint are incorporated as though fully set forth herein.

51. Under the Policy, Zurich had a duty to defend Fifty States and Martino against the WDNR claims set forth in the RP Letters.

52. The scope of the duty to defend includes attorney fees and consultant costs incurred to investigate the nature and extent of the contamination and to arrive at a remedial action plan that will be approved by WDNR.

53. For over four years, Zurich, along with CNA and Badger, honored their joint and several duties to defend by sharing the site investigation costs and attorney fees among them under cost sharing agreements.

54. By unilaterally reclassifying all the environmental consultant costs as indemnity payments and withdrawing from the defense of the tendered claims and the cost sharing agreements with CNA and Badger, Zurich breached its duty to defend Fifty States.

9

55. Plaintiffs, directly and by virtue of the assignments received from CNA and Badger, have been injured by Zurich's breach and have suffered damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
(Bad Faith)

56. All allegations of this Complaint are incorporated as though fully set forth herein.

57. As evidenced by the handling of the tendered claims by CNA and Badger, Zurich engaged in bad faith conduct because a reasonable insurer would not enter into a cost-sharing agreement to pay for consultant costs as part of its defense obligation and then, four years after accepting the tender under a reservation of rights and honoring its cost-sharing agreement, unilaterally reclassify such payments to fall within its indemnity obligation and withdraw from the defense of the tendered claims.

58. By virtue of Zurich's bad faith conduct, Plaintiffs have been injured and suffered damages in an amount to be determined at trial.

59. By virtue of Zurich's bad faith conduct, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
(Declaratory Relief)

60. All allegations of this Complaint are incorporated as though fully set forth herein.

61. Because Zurich has breached its duty to defend Martino, Plaintiffs are entitled to a judgment under the Uniform Declaratory Judgment Act, Wis. Stat. § 806.04, declaring that Plaintiffs are entitled to coverage from Zurich for all remediation costs at the 7th Avenue and 52nd Street sites up to the policy limits of $150,000.00 for each site.

**WHEREFORE**, Plaintiffs respectfully request judgment as follows:

A. On their First Claim for Relief, declaring that Zurich has breached its duty to defend Martino and awarding damages in an amount to be determined at trial;

B. On their Second Claim for Relief, declaring that Zurich engaged in bad faith conduct and awarding damages, including punitive damages, in an amount to be determined at trial;

C. On their Third Claim for Relief, declaring that Plaintiffs are entitled to coverage for all remediation costs at the 7th Avenue and 52nd Street sites up to the policy limits of $150,000.00 for each site;

D. Awarding the Plaintiffs their reasonable attorneys' fees and costs incurred in this action; and

E. Granting such additional relief as is necessary to achieve a just result.

Dated at Milwaukee, Wisconsin, this 22nd day of June, 2017.

        FRIEBERT, FINERTY & ST. JOHN, S.C.
        Attorneys for Plaintiffs, Fifty States Distributors
        d/b/a Martino's Master Dry Cleaners, and Red
        Maple Management, LLC


        By: *Electronically signed by Ted A. Warpinski*
           Ted A. Warpinski (SBN: 1018812)
           Christopher M. Meuler (SBN: 1037971)
           M. Andrew Skwierawski (SBN: 1063902)

P.O. ADDRESS:
330 East Kilbourn Avenue, Suite 1250
Milwaukee, WI 53202
(414) 271-0130

11

Case 2:17-cv-01045-NJ   Filed 07/27/17   Page 11 of 11   Document 1-1